HENRY HILL *vs.* JOHN DOWNES & others.

Suffolk. March 26. — Oct. 21, 1878. AMES & MORTON, *JJ.*, absent.

A testator, by his will, devised his estate to his wife for life or during widowhood, and, if she married again, or at her death, to his "heirs at law;" bequeathed small legacies to his children, who were his heirs at law, "in addition to their equal shares of my real and personal estate to which they may be entitled" after the termination of their mother's interest; and gave the residue of his estate, after such termination, to his children, "to be divided in equal shares between them, to have and to hold the same to them, my said children, their heirs and assigns forever; and my said wife shall never, by the law of descent, become the heir to any or either of my children; and if it should so happen that any child of mine, holding property, should decease during the lifetime of its mother, the property thus left by such deceased child shall become, belong to and be received by the other surviving children or child." *Held,* that the clause as to the inheritance of the testator's wife from his children and as to the property of any child, dying during its mother's lifetime, going to the survivor or survivors, was inoperative and void ; that the testator's children took vested remainders subject to his wife's life estate, the children of a deceased child taking by right of representation; and that the testator's wife inherited her proportionate share of the estate of a child who died intestate and without issue during her widowhood.

BILL IN EQUITY, filed May 18, 1877, by the executor of the will of John Downes, who died on August 11, 1854, to obtain the instructions of the court.

The will, which was dated July 29, 1852, and admitted to probate on August 15, 1854, contained, among other provisions not material to be stated, the following :

" First. I give and bequeath to my beloved wife, Maria Gertrude Downes, the use and improvement of all my real and personal estate, (excepting such as is otherwise disposed of in and by this will,) to have and to hold the said use and improvement during her natural life, or so long as she may remain my widow; but in the event of her again marrying, or at the time of her decease, all the said real and personal estate of which she held the use and improvement is hereby given, bequeathed to my heirs at law."

[Here followed small specific legacies to three of the testator's four children, his heirs at law, John Downes, Jr., Charles A. Downes, Henry H. Downes, and a legacy of $100 to the other, Julia M. Missroon.]

" All the foregoing legacies and bequests to my children are in addition to their equal shares of my real and personal estate

tc which they may be entitled after the determination of the use and improvement thereof as hereinbefore provided for their mother.

"And as to the residue of all my estate, whether real, personal or mixed, of which I may die seised and possessed, after the payment of all just debts, and the foregoing legacies and annuity, and after discharging all the claims which my widow may have and hold under this will, I hereby give, bequeath and devise the said residue to my four children above named, to be divided in equal shares between them, to have and to hold the same to them, my said children, their heirs and assigns forever; and my said wife shall never, by the law of descent, become the heir to any or either of my children; and if it should so happen that any child of mine, holding property, should decease during the lifetime of its mother, the property thus left by such deceased child shall become, belong to and be received by the other surviving children or child."

The bill alleged that Henry H. Downes died on September 26, 1864, unmarried, intestate and without issue; that John Downes, Jr., died on September 21, 1865, leaving a widow and six children and a will, by which he gave the income of all his property to his widow while she remained unmarried, such property at her death to be divided equally among his children; that Charles A. Downes died on January 24, 1875, unmarried, intestate and without issue; and that Maria G. Downes, the testator's wife, died on February 22, 1877.

The executor requested the following instructions:

"1. Whether or not Julia Maria Missroon, as only surviving child of said John Downes, is entitled, under said will, to all the rest and residue of the estate of said John Downes.

"2. Whether or not the widow and children of John Downes, the younger, are entitled, under said will, to a share of the rest and residue of said estate; and if they are, what share, respectively, and to whom he should convey the same.

"3. Whether, upon the decease of Henry H. Downes, his interest in said estate became vested in his heirs at law; to wit, in his brother Charles A. Downes, his sister, Mrs. Missroon, his brother John Downes, and his mother; and whether, if his interest would have so vested, his mother was prevented from tak

ing the share she would have otherwise taken, by the terms of said will.

" 4. Whether, upon the decease of Charles A. Downes, the interest in the estate, if any, which he took as one of the heirs at law of Henry H. Downes, is to be considered as part of the estate to go to the surviving children of the testator, or to the heirs at law of said Charles A. Downes."

The defendants filed answers admitting the allegations of the bill to be true ; and the case was heard, on the bill and answers, by *Endicott*, J., who made a decree, which, so far as need now be stated, was as follows :

" This cause came on to be heard, and was argued by counsel, and, upon consideration thereof, it is adjudged and decreed, that by the will of the testator John Downes, his four children living at his death, to wit, John Downes, Junior, Charles A. Downes, Henry H. Downes and Julia M. Missroon, took vested remainders in the rest and residue of his estate, subject- to the life estate therein of his widow, Maria G. Downes ; that upon the death of Henry H. Downes, unmarried and without issue, and intestate, his share of the rest and residue of said estate descended in equal shares to his mother, Maria G. Downes, and his brothers, John Downes, Junior, and Charles A. Downes, and his sister, Julia M. Missroon, subject to administration thereon according to law ; that the legatees and devisees of John Downes, Junior, are entitled under his will to the share of said rest and residue vested in him at his death, subject to administration thereon according to law ; that upon the death of Charles A. Downes, his share of said rest and residue descended in equal shares to his mother, Maria G. Downes, his sister, Julia M. Missroon, and the children of John Downes, Junior, the said children aking by representation, subject to administration thereon according to law." The defendants appealed from this decree.

*H. C. Hutchins*, for Julia M. Missroon and the executor of Maria G. Downes.

*E. D. Sohier*, for the widow of John Downes, Jr.

*J. D. Bryant*, for the children of John Downes, Jr.

LORD, J. The decree of the presiding justice in this case must be affirmed. It is undoubtedly true that the testator intended that his widow should take nothing of his estate, as heir

at law to either of his children, if any of them should die dur ing her lifetime. This provision it was competent for him to make, if he used apt and sufficient words for that purpose. A testator may, by the use of appropriate language, prevent the operation of the statute of wills, or the statute of distributions upon property which he leaves, during the time in which he has power over the same. A testator cannot, however, give an abso lute estate in fee simple to one, and then, making no other dis position of it, declare that it shall not descend in the manner provided by law.

We have said that it was, in this case, the intention of the tes tator that his widow should not take by inheritance any portion given to a child who-should die during her lifetime. This in tent, as literally expressed, cannot be effected. We should, how ever, hold that such intent, if clearly discoverable from the will, though imperfectly and defectively expressed, should be carried out, if this could be done consistently with established rules of law, with the true principles of construction and with the gen eral intent of the will. We find it difficult to do so without contravening each one of these elements.

While it is true that such intent existed, it is also entirely plain that it was not the only nor the leading intent of the tes tator ; but was subordinate to the well-expressed intention that the children should take an absolute vested interest in all of what he should die possessed, subject only to the life estate of his widow. This general and controlling purpose is not only stated in apt and even technical language, but is thus stated re peatedly. The first clause of the will clearly manifests this; for, after giving all his estate, with unimportant exceptions, to his widow, during her widowhood, he adds, " but in the event of her again marrying, or at the time of her decease, all the said real and personal estate of which she held the use and improve ment is hereby given, bequeathed to my heirs at law." His heirs at law were his four children, John Downes, Jr., Charles Albert Downes, Henry Hill Downes and Julia Maria Missroon. To each one of these four children he had given a specific leg acy, of comparatively slight intrinsic value, except to Mrs. Miss roon, to whom he gave one hundred dollars. After these four legacies, he adds " All the foregoing legacies and bequests to

my children are in addition to their equal shares of my real and personal estate," after the termination of the provision for their mother. In the residuary clause of the will, after the mother's estate is terminated, he says: " I hereby give, bequeath and devise the said residue to my four children above named, to be divided in equal shares between them, to have and to hold the same to them my said children, their heirs and assigns forever." It cannot be doubted that this language is technically accurate for the purpose of giving to each of the children a vested remainder. Then follows the language from which the apparent difficulty arises, " and my said wife shall never, by the law of descent, become the heir to any or either of my children." If it stopped there, it would have been clearly inoperative and void, as an attempt to alter the statute of distributions of the Commonwealth. But the clause proceeds, " and if it should happen that any child of mine, holding property, should decease during the lifetime of its mother, the property thus left by such deceased child shall become, belong to and be received by the other surviving children or child." This language is, in several respects, peculiarly infelicitous. In the first place, it literally refers to all such as the child should be possessed of in any mode ; and is not only an alteration of the statute of distributions, but is a repeal of the statute of wills, taking away from persons of full age the power to dispose of their property by will. Of course, it could not be contended that such was the intent of the testator ; but that the intent must be limited to the remainder of the estate given by the will. The expression, " holding property," would then create embarrassment. It is not easy to appreciate the precise idea which the scrivener had in his mind, when using the words " holding property," if the legatee was to have no property except upon condition of surviving the tenant for life, or her who was entitled to the income during life.

Whatever other purpose the testator had in his mind, this seems as clearly evident as if it were expressed in words, that it was the intention of the testator that the issue of a deceased child should take to the exclusion of other children of the testator. It is true that this intent is not found in the language we are commenting upon ; but the previous language of the residuary clause, as well as the first clause of the will and the

purpose to give equal shares to the several children, are con‹
clusive that the issue of a deceased child was to take the parent's
share.

There is another difficulty in attempting to give construction
to the language used. The provision for the widow is limited to
her widowhood. The clause in the will we are commenting on
relates to the death of a child during the lifetime of the mother,
though her widowhood might have ceased years before, and the
property have been for years in the possession of the child. It
is suggested by counsel, that we may, for the purpose of carrying
out the intention of the testator, insert the words " intestate and
without issue," so that the will would read, " if it should so hap-
pen that any child of mine, holding property, should decease in-
testate and without issue," &c. ; and, although not suggested by
counsel, it would be necessary also to substitute " during the
widowhood " for the phrase " during the lifetime." It is un-
doubtedly true that words may be supplied, when the intention
of the testator is entirely clear, and the supplied words do not
contravene any intent of the testator. Words cannot be sup-
plied to create an intent ; and if the intent is not manifest, the
supplying of words is making a will for the testator, and not
giving effect to his will. In this case, the words used by the
testator do not express an intent which it was competent to the
testator to have. We could insert words which would express
an intent competent to him ; and then we could insert other
words which would make that intent consistent with the remain-
der of the will; but when we had done so, the inquiry would
arise whether it was the will of the testator, or one made for
him. Upon what principle should we insert the word " intes-
ate," or determine whether to insert the word " unmarried," or
the word " married ? " We have no evidence from the will itself
that the testator did not intend to prevent any portion of the
residue from being diverted from the other children by will, as
well as by inheritance by the mother. What words it is neces-
sary to add, in order to carry out the intention of the testator,
must be, at best, but conjectural ; and, inasmuch as the literal
meaning of the language used cannot be attached to it, and a
liberal construction of the language, in order to meet the testa-
tor's views, will obviously contravene the prime intent of the

testator, and as it is uncertain what words should be used to effectuate his purpose, the language used can only be consid· ered inoperative and void; and in that case the true meaning of the will is expressed in the decree of the presiding judge.

*Decree affirmed, with costs to the plaintiff on the appeal.*